Butler v. Thompson/Center Arms    CV-01-106-JD  10/31/01

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Trent Butler

    v.                                    Civil No. 01-106-JD
                                      Opinion No. 2001 DNH 203
Thompson/Center Arms Co., Inc.


O R D E R


The plaintiff, Trent Butler, brings a diversity action against Thompson/Center Arms Co. ("Thompson"), alleging product liability claims arising from a hunting accident with a Thompson Renegade rifle. Thompson denies the allegations and raises affirmative defenses. Butler moves to transfer venue of this action to the Eastern District of Oklahoma (document no. 7), pursuant to 28 U.S.C. § 1404(a). Thompson objects (document no. 8).


Background

On November 2, 1997, Butler, then an Oklahoma resident aged sixteen and one-half years, embarked on a deer hunting outing in Oklahoma with his father, Phillip Butler, and Bo Frank. He carried a Renegade model black powder muzzle-loaded rifle, allegedly manufactured by Thompson. Butler climbed into a tree stand and sat down. He put the hammer of his rifle in a quarter-cock position and positioned the rifle so the butt rested on the

floor and the muzzle pointed towards the sky. Butler heard a noise and turned around, and the rifle fell through the floor boards of the tree stand. Butler alleges that the hammer of the rifle struck a board as it fell, fracturing some internal components. The falling rifle discharged a bullet, which struck Butler and shattered his femur.

Butler screamed for help and James Flourney and Jerry Leonard arrived to assist him. Flourney went to locate Phillip Butler while Leonard administered first aid. After finding Phillip Butler and alerting him to the accident, Flourney went home, where his mother called an ambulance. He and his father, Robert Flourney, owner of the property, then returned to the scene. Phillip Butler arrived at the tree stand and helped his son to the ground. Bo Frank reached the tree stand shortly thereafter.

An ambulance arrived and transported Butler to a helicopter, which flew him to a hospital in Tulsa, fifty miles from the accident site. Butler underwent a number of orthopedic and neurological surgeries on his right leg, followed by rehabilitative therapy.

Butler, now a Florida resident, brings suit in this court alleging that his injuries are the direct and proximate result of the defective design and/or manufacture of the Renegade rifle he

2

carried that day.  He alleges that Thompson, a New Hampshire corporation, designed and manufactured the defective rifle and is strictly liable for his injuries.  He also claims that Thompson breached implied and express warranties, and failed to provide clear and adequate warnings.

Discussion

Butler moves to transfer this action to the Eastern District of Oklahoma, pursuant to § 1404(a).  He argues that a transfer is warranted for the convenience of the parties and witnesses, and in the interest of justice.  Thompson objects to the motion and alleges that Butler can not meet his burden of showing that a balancing of factors under § 1404(a) favors transfer.

Section 1404(a) provides:

> For the convenience of parties and witnesses,
> in the interest of justice, a district court
> may transfer any civil action to any district
> where it might have been brought.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'  A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors."  Stewart Org., Inc. v. Ricoh Corp., 487

U.S. 22, 29 (1988), quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964).  Factors to be considered by the court include:

> (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) [the] cost of obtaining willing witnesses, and (6) trying the case most expeditiously and inexpensively.

F.A.I. Electronics v. Chambers, 944 F. Supp. 77, 80-81 (D. Mass. 1996).  A motion to transfer venue will be granted if the moving party makes "a clear showing that a balancing of conveniences strongly favors the granting of a motion."  Buckley v. McGraw-Hill, 762 F. Supp. 430, 439 (D.N.H. 1991), quoting Crosfield Hastech, Inc. v. Harris Corp., 672 F. Supp. 580, 589 (D.N.H. 1987).

This case is atypical because the moving party, Butler, is also the plaintiff.  Cf., Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.")  Butler had the option of choosing any proper venue in which to bring this action.  Butler's motion does not provide his reasons for filing suit here, but Thompson suggests that Butler's action would be barred under the Oklahoma statute of

limitations.[1]  A plaintiff's initial choice of forum receives deference from the court, but a motion to transfer filed by the plaintiff is subject to the same burden as a motion to transfer filed by a defendant.  See Coady v. Ashcroft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).  Like any other moving party, Butler must show that a balance of the factors favors transfer.  "Transfer is inappropriate if the effect is merely to shift inconvenience from one party to the other."  Buckley, 762 F. Supp. at 439.

In this case, the first factor to consider is the convenience of parties.  "[I]n weighing the convenience of the parties, the court may take into account the financial strength of each."  Galonis v. Nat'l Broad. Co., 498 F. Supp. 789, 793 (D.N.H. 1980).  Butler contends that a transfer is warranted because Thompson could absorb the costs of traveling to Oklahoma more easily than he could absorb the costs of traveling to New Hampshire.

Since Butler is a resident of Florida, neither New Hampshire nor Oklahoma would appear to afford him substantially greater convenience.  Butler has not shown that the cost of litigating in New Hampshire is higher than the cost in Oklahoma.  Butler's only

---

[1] Neither party disputes that jurisdiction and venue are proper in the District of New Hampshire, or that this action also might have been properly brought in the Eastern District of Oklahoma, statute of limitation issues aside.

financial burden would be to transport himself to New Hampshire for the duration of a trial. Although Butler states that he could stay for free at his father's home in Oklahoma during a trial, the parties estimate that a trial would take only five days, and in any event Butler would still incur travel costs.

Thompson is a New Hampshire corporation, and New Hampshire is the location of Thompson's primary place of business and the manufacturing plant that produced the rifle at issue. Thompson does not dispute that as a corporation, it is probably more capable of absorbing litigation costs than Butler. However, a transfer would appear to result in only a marginal cost reduction to Butler. The financial benefit to Butler of free lodging in Oklahoma is insufficient to justify the additional costs that would be placed on Thompson. Therefore, on balance, consideration of the parties' convenience weighs against a transfer.

The next factor to consider is the convenience of the witnesses. "The most important factor in deciding whether to transfer an action is the convenience of witnesses." Buckley, 762 F. Supp. at 440. Butler asserts that key witnesses with factual knowledge of the underlying accident reside in Oklahoma. In support of his assertion, Butler submits an affidavit from his counsel offering the substance of testimony expected from Frank,

6

James Flourney, Robert Flourney, Leonard, and three medical personnel, all of whom reside in Oklahoma. Butler argues further that Thompson's witnesses are mainly corporate employees who can be compelled to travel to Oklahoma to testify there, and therefore the convenience of his witnesses weighs in favor of a transfer. See McCasky v. Continental Airlines, 133 F. Supp. 2d 514, 527 (S.D. Tex. 2001).

In response, Thompson argues that the witnesses proffered by Butler relate only to his injury and damages and are not material to the central issue of product liability. Thompson asserts that its key witnesses are located in New Hampshire, and the events underlying the design and manufacture of the allegedly defective rifle occurred here. Thompson submits an affidavit from its counsel stating that the firearm at issue in this case was designed and manufactured in New Hampshire, and all of Thompson's fact witnesses regarding the design and manufacture are located within New Hampshire.[2]

---

[2] A party must make more than "general allegations about the identity and location of witnesses who would be inconvenienced." Buckley, 762 F. Supp. at 440. Thompson's affidavit mentions one specific witness by name, Michael Wright, and states that another unnamed employee has been located and identified. However, the court considers the quality of testimony to be offered more than the number of witnesses involved. See Anderson v. Century Prods. Co., 943 F. Supp. 137, 149 (D.N.H. 1996). At any rate, Thompson does not bear the burden in this motion and need not rely exclusively on the convenience of its witnesses.

In an action for product liability, the scene of the accident is not necessarily the situs of operative facts. <u>See</u> <u>Mohamed v. Mazda Motor Corp.</u>, 90 F. Supp. 2d 757, 776 (E.D. Tex. 2000) (denying transfer and reasoning that, "[t]he location of the accident revealing the allegedly defective product is a red herring for transfer analysis in a case where the plaintiff is suing for the allegedly defective design and manufacture of the product."); <u>McFarland v. Yegan</u>, 699 F. Supp. 10, 15 (D.N.H. 1988) ("'New Jersey overwhelmingly appears to be the situs of operative facts, a circumstance favoring defendants' motion [to transfer venue].'" <u>quoting</u> <u>Sheet Metal Workers' Nat'l Pension Fund v.</u> <u>Gallagher</u>, 669 F. Supp. 88, 93 (S.D.N.Y. 1987)).

The Oklahoma witnesses offered by Butler do not claim they were present when the rifle was designed and manufactured, or when Butler's injury occurred. Their testimony may be relevant to the question of damages, but it is not material to the issue of liability. On balance, consideration of the witnesses' convenience weighs against transfer.

The court next considers the availability of process to compel attendance of unwilling witnesses, and the cost of obtaining witnesses. Butler points out that his witnesses in Oklahoma are not subject to this court's subpoena power and may

not be compelled to travel here to testify.[3]  Fed. R. Civ. P. 45(c)(3)(A)(ii).  Butler asserts that he does not have adequate resources to finance his witnesses' travel.  In contrast, Butler contends, Thompson may compel its employee-witnesses to travel to Oklahoma for testimony.

However, the witnesses Butler wishes to call from Oklahoma are favorable to his interests, and he has not shown that any are unwilling to voluntarily travel to a trial.  Furthermore, as unavailable witnesses, they could testify by videotaped deposition, which is convenient and probably will cost less than having them testify in person in Oklahoma.  See Dealtime.com v. McNulty, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000); Fed. R. Civ. P. 32(a)(3)(A)(ii); Fed. R. Evid. 804(a)(5).  Butler argues that "[j]ustice is better served when the testimony of witnesses is live, rather than by deposition."  Anderson, 943 F. Supp. at 149.  However, this preference for live testimony is more relevant to the convenience of key witnesses, rather than to the convenience of "less central" witnesses.  See id.  As discussed above, the Oklahoma witnesses are not key to the issue of defective design

---

[3] "[T]he court by which a subpoena was issued shall quash or modify the subpoena if it requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(3)(A)(ii).

and/or manufacture, and their testimony may be given by videotaped deposition. On balance, this factor weighs against transfer.

Finally, the court must consider the interest of justice.[4] There is "a local interest in having localized controversies decided at home." <u>Gulf Oil Corp.</u>, 330 U.S. at 509. Local interest includes selecting a forum that is "at home with the state law that must govern a case, rather than having a court in some other forum untangle problems in conflicts of laws. . . ." <u>Id.</u> Butler argues that Oklahoma is the better venue in this case, because Oklahoma law may apply. However, Butler does not analyze the issue under New Hampshire's choice-of-law rules and does not assert that a conflict of law exists. Even if Oklahoma law did apply under New Hampshire choice-of-law rules, this court is capable of applying it.

Butler maintains that Oklahoma has the only local interest in this case. He points out that his injury and treatment occurred there, as well as the sale and use of the rifle. It appears that New Hampshire has at least an equal local interest in this case, however, because it involves a New Hampshire

---

[4] The parties agree that the ease of access to sources of proof, specifically physical documents, will not be an issue in either venue. Neither party is planning a view of the injury site.

10

corporation that allegedly produced a defective and dangerous rifle at a New Hampshire plant operated by New Hampshire residents and employees.

The parties concur that this case might have been brought in Oklahoma, but venue is proper in New Hampshire. Butler has failed to show that the convenience of parties and witnesses, in the interest of justice, predominates in favor of a transfer. The court finds that on balance the factors considered above weigh against transferring this case to the Eastern District of Oklahoma. The motion is denied.


## Conclusion

For the foregoing reasons, the plaintiff's motion to transfer venue (document no. 7) is denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge


October 31, 2001

cc:  Joyce E. Smithey, Esquire
     Derek K. Burch, Esquire
     Steven M. Gordon, Esquire


11